Richard J. BOSIO, Plaintiff,

v.

NORBAY SECURITIES, INC. and
Benjamin Taormina, Defendants.

No. 84 Civ. 3914.

United States District Court,
E.D. New York.

Jan. 8, 1985.

Daniel J. Piliero II, Eileen Malloy-Wall, Tighe, Curhan & Piliero, Washington, D.C., for plaintiff.

Ormsten & Evangelist, New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff brings this action seeking compensatory and punitive damages under the Securities and Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (the "1934 Act"), and state law. Defendants have moved to dismiss the complaint or parts thereof for a variety of reasons. Plaintiff has also moved to amend the complaint. For the reasons set forth below, defendants' motion to dismiss the first, second, third and fourth causes of action, as well as the demand for punitive damages, is granted. As to the fifth and sixth causes of action, defendants' motion is denied. Plaintiff may amend his complaint in a manner consistent with this opinion.

### Background

At all the time relevant to the complaint, plaintiff Bosio, a California resident, main-

tained an account with defendant Norbay Securities, Inc. ("Norbay"), a securities brokerage firm incorporated in New York and a member of the Boston Stock Exchange ("BSE") and National Association of Securities Dealers ("NASD"). Defendant Taormina is a broker-dealer employed by Norbay who acted as plaintiff's broker during the period in question.

In July 1982, in connection with a problem between plaintiff and Norbay which is not at issue here, plaintiff informed defendant Taormina and a Ms. Spinella, another broker, that neither they nor any other brokers at Norbay should enter into any transactions for his securities account without his express authorization. Later in 1982, plaintiff instructed Ms. Spinella, who was then with another firm, to sell 49,000 of his 223,000 shares of Western Consortium stock, send him the proceeds of that sale, and reissue to him a certificate for the remaining 174,000 shares. Because Spinella's firm could not handle the transaction, plaintiff was referred back to Norbay.

At plaintiff's instruction, Taormina executed the sale of the Western Consortium stock. This dispute arises, however, from plaintiff's allegation that the $43,947 in proceeds resulting from that sale were never turned over to him. Rather, the complaint alleges, these proceeds were put into "an account held with Norbay of a third party." Plaintiff alleges that although Taormina initially represented that the proceeds would be transferred to plaintiff, Taormina has never done so despite numerous demands by plaintiff. Neither the identity of this third party nor the circumstances surrounding this alleged improper transaction have been revealed by either party to this Court.

In his complaint, plaintiff has alleged six causes of action as follows: (1) defendants violated § 10(b) and § 15(c)(1) of the 1934 Act and the rules promulgated thereunder; (2) Norbay is liable under § 20 of the 1934 Act for any damages caused to plaintiff by Taormina by violations of the Act; (3) defendants violated NASD and BSE rules requiring fair dealings with customers; (4) defendants committed common law fraud by intentionally making material misrepre-

sentations or omissions on which plaintiff relied and thereby suffered injury; (5) defendants breached a fiduciary duty to plaintiff by failing to carry out plaintiff's instructions to forward the proceeds to him and instead transferred them to a different account; and (6) defendants converted plaintiff's proceeds.

For relief, plaintiff seeks compensatory damages in the amount of the proceeds, pre- and post-judgment interest, and an estimated $15,000 in attorneys' fees. On the fiduciary duty claim plaintiff seeks punitive treble damages under California law, and on the fraud claim, plaintiff seeks the same damages based on common law.

*Discussion*

Because defendants have moved to dismiss the complaint or parts thereof for a variety of reasons, I will address defendants' motion as it pertains to each cause of action.

*Causes of Action Under The 1934 Act*

In his first cause of action, plaintiff alleges that in connection with their sale of the Western Consortium stock, defendants

> willfully and fraudulently through the means and instrumentalities of interstate commerce (1) employed a device, scheme or artifice to defraud Bosio; and/or (2) made misrepresentations and/or omissions of material fact to Bosio; and/or (3) engaged in acts, practices, or a course of business which operated to defraud all [sic] and/or deceive Bosio

in violation of § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and § 15(c)(1) of the Act, 15 U.S.C. § 78*o* (c)(1).

Section 10(b) of the 1934 Act makes it unlawful for anyone to use a device "in connection with the purchase or sale of any security." Section 15(c)(1) prohibits a broker or dealer from using the mails or other means of interstate commerce "to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security...." Although not specified in the complaint, plaintiff's motion papers aver that the alleged securities violations stem from Taormina's representation that he

would complete the Western Consortium transaction in accordance with plaintiff's instructions, and that Taormina thus induced plaintiff to allow defendants to handle the transaction. Plaintiff alleges that defendants' fraudulent act was the "improper distribution of proceeds in connection with the sale of Western Consortium, Inc. stock." Plaintiff's Memorandum at 10, 13.

Defendants move to dismiss this cause of action for failure to allege fraud with particularity as required by Rule 9(b) and for failure to allege the essential elements of the statutory violations alleged. Because I find that plaintiff fails to state a claim under § 10(b) and § 15(c)(1), I need not address any other alleged bases for dismissal.

Plaintiff relies on *Opper v. Hancock Securities Corp.*, 250 F.Supp. 668 (S.D.N.Y.), *aff'd*, 367 F.2d 157 (2d Cir.1966) to support his allegation that a failure to follow a customer's order is actionable under the Act. In that case, the plaintiff had requested that the defendant, a broker-dealer, sell 3,000 of plaintiff's shares of stock at the best price obtainable. The defendant assured plaintiff that it would sell the shares but did not do so, allegedly because it had not yet obtained a market for the shares. At the same time, however, defendant sold over 6,000 of its own shares of the same stock.

The *Opper* trial court found that plaintiff had stated a cause of action under § 10(b) and § 15(c)(1). The court held:

It has been settled for a long time that when Congress struck in this legislation at the particularized problems of "manipulative, deceptive, or otherwise fraudulent" practices in the securities markets, it meant to reach frauds that "may take on more subtle and involved forms than those in which dishonesty manifests itself in cruder and less specialized activities." ... We are concerned in this case with a garden variety instance of deception, nondisclosure, and self-preferment by a broker purporting to act as a selling agent.

250 F.Supp. at 673 (citations omitted). Affirming the district court, the Second Circuit itself differentiated *Opper* from the instant case. The court stated that a broker's failure to carry out a sale order *while disposing of its similar stock* constituted a breach of contract and securities law violation. 367 F.2d at 158 (citing *Barnett v. United States*, 319 F.2d 340, 344, 345 (8th Cir.1963)). *Opper* therefore does not provide support for plaintiff's position.

■■■ I find, however, that other authorities warrant the dismissal of plaintiff's claims under § 10(b) and § 15(c)(1). It is well established in this circuit that the "in connection with" the purchase/sale of securities requirement of 10(b) requires using a device "of a sort that would cause reasonable investors to rely thereon, and [therefore] cause them *to purchase or sell a corporation's securities.*" *SEC v. Texas Gulf Sulfur*, 401 F.2d 833, 860 (2d Cir. 1968) (en banc), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969) (emphasis added). This principle has been reiterated in numerous district and circuit court cases in this circuit. The "fraud practiced must have been *prior to or contemporaneous with* the sale of securities," *Freschi v. Grand Coal Venture*, 551 F.Supp. 1220, 1227 (S.D.N.Y.1982) (*citing Kogan v. National Bank of North America*, 402 F.Supp. 359, 361 (E.D.N.Y.1975)) (emphasis added). As stated in plaintiff's motion papers and at oral argument, plaintiff alleges that defendants acted in violation of the 1934 Act because Taormina fraudulently promised to "follow plaintiff's instructions" regarding the sale of the Western Consortium stock and falsely represented that he would forward the proceeds of the sale to plaintiff. This sort of misrepresentation, if it was a misrepresentation at all, goes not to any inducement by the defendants regarding the investment purpose of the sale, but to the arrangements concerning the mechanics of the sale. As such, plaintiff's claims under § 10(b) and § 15(c)(1) must fail.

Further support for this conclusion is found in *Smith v. Chicago Corp.*, 566 F.Supp. 66 (N.D.Ill.1983). Plaintiff's caus-

es of action under § 10(b) and Illinois law were based on claims that defendant's employee failed to make certain purchases for plaintiffs' accounts although instructed to do so, and also fraudulently withdrew funds from plaintiffs' accounts. Two issues were therefore before the court: whether plaintiffs had standing under § 10(b) and whether a plaintiff can state a claim under that section "when purchases he orders are not made and money is misappropriated from his securities account." *Id.* at 68. Although not precisely identical, the second issue is similar to that presented in the instant case.

Relying on *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) and *Sante Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the *Smith* court found that plaintiffs lacked standing because although they *requested* that defendant's employee purchase stock on their behalves, they never actually became "purchasers" within the meaning of § 10(b). In dictum that is helpful to the instant analysis, however, the court went on to state that plaintiffs had also failed to state a claim under § 10(b). Quoting *Sante Fe,* the court reiterated the principle that "a cause of action under the antifraud provisions of the Securities Exchange Act should not be implied where it is 'unnecessary to ensure the fulfillment of Congress' purposes' in adopting the Act," that purpose being "full and fair disclosure in securities transactions." 566 F.Supp. at 69, 70 (citing *Sante Fe, supra,* 430 U.S. at 477, 478, 97 S.Ct. at 1303). The *Smith* court determined:

> Thus, a 10b–5 action should not be implied where the wrongs sought to be addressed in an action "do not fall within § 10(b)'s fundamental purpose of requiring full and fair disclosure to participants in securities transactions of the information that would be useful to them in deciding whether to buy or sell securities."

566 F.Supp. at 70 (*citing O'Brien v. Continental Illinois National Bank & Trust Co.*, 593 F.2d 54, 62–63 (7th Cir.1979)). Asking itself what decisions defendant's

employee's alleged misrepresentations may have influenced, the court found that "[the] information withheld from plaintiffs was material to their decision not to terminate their account with the defendant, but it did not relate to the decisions to make purchase requests." 566 F.Supp. at 70. Similarly, the alleged misrepresentation here cannot be said to have been the type of fraud against which § 10(b) was intended to protect. *See Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930 (2d Cir. 1984).[1]

The plaintiff here complains essentially of defendants' failure to transmit to him the proceeds of the sale of stock. Assuming that defendants' were at fault in doing so, the words of *Smith* are again appropriate:

> Plaintiffs' claim here is essentially one for conversion. The only connection with federal securities laws is that the funds were converted from a securities investment account. However, the allegedly converted funds were not used to purchase securities and none of the acts complained of by plaintiffs involved the actual sale or purchase of securities. In light of the principles enunciated by the Court in *Sante Fe* and *Blue Chip Stamps*, this court is unwilling to imply a cause of action under Section 10(b) in this case, where the underlying claim is, in essence, one of state law and where no actual securities transactions are involved.

566 F.Supp. at 70.

For the reasons set forth above, I find that plaintiff has failed to state a claim under both § 10(b) and § 15(c)(1), which has the same essential requirements as the former section. *See supra* at 4. If all brokerage customers were permitted to maintain § 10(b) and § 15(c)(1) claims by alleging that the defendant misrepresented its intention to follow the customer's instructions and to turn over the proceeds of a sale to the customer, the courts would be flooded with innumerable conversion claims that were not intended to be covered by the 1934 Act. Such "bootstrapping" of a con-

version claim should not be permitted. *See Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir.1971) (plaintiff could not bootstrap claim that defendant failed to sell stock promptly and later liquidated margin account in breach of alleged agreement into § 10(b) by conclusorily alleging defendant's actions were fraudulent).

■ In his second cause of action, plaintiff alleges that defendant Norbay is liable under § 20 of the 1934 Act, 15 U.S.C. § 78t, for any violations of the Act committed by Taormina. That section imposes liability upon "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter...." Because I have found that plaintiff's purported § 10(b) and § 15(c)(1) claims against Taormina are insufficient, plaintiff cannot state any claim against Norbay under § 20.

For the above reasons, plaintiff's first and second causes of action are dismissed.

*Claims Under the NASD and BSE Rules*

Defendants urge that the third cause of action, alleging violation of the NASD and BSE rules requiring fair dealing with customers, should be dismissed because a private right of action does not exist under these rules, or, alternatively, because this cause of action does not specify the rules allegedly violated or how such rules were allegedly violated. I find that dismissal of this claim is warranted for both of the reasons set forth by the defendants.

■ At the outset it is worth noting that plaintiff's third cause of action does not state the specific rules which plaintiff alleges have been violated; rather, plaintiff suggests only that "Norbay and Taormina violated the NASD and Boston Stock Exchange rules of fair dealings with customers." Certainly such an allegation is insufficient within the meaning of Fed.R.Civ.P. 8(a) and 9(b) to apprise the defendants and this Court of the nature of plaintiff's claim. Plaintiff attempts to correct this insufficiency by stating in his memorandum in opposition to this motion at 15:

The NASD Rules contain only one rule covering "Fair Dealing with Customers." NASD Manual, Rules of Fair Practice,

Art. III, Sec. 2, ¶ 2152. As such, it is not "beyond the defendant's ability to divine the nature of the charges" contained in Count III as suggested in their memorandum. A cursory examination of the NASD Rules would have indicated which rule Defendants have allegedly violated.[2]

While plaintiff's contention may be true, it is appropriate for plaintiff to apprise the court and defendants of the identity of this rule in the complaint and not in its opposition papers. The defendant should not be required to "divine" the meaning of the plaintiff's pleading. *See* Rule 8(a)(2).

■ Even if plaintiff's third cause of action had stated the specific NASD and BSE rules upon which plaintiff relies, it is unlikely that plaintiff's claim could survive a motion to dismiss. Plaintiff asserts that cases such as *Rolf v. Blyth Eastman Dillon & Co.*, 424 F.Supp. 1021 (S.D.N.Y. 1977), *aff'd*, 570 F.2d 38 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978), and *Vetter v. Shearson Hayden Stone, Inc.*, 481 F.Supp. 64 (S.D.N.Y.1979), permit a plaintiff to assert a private right of action under the NASD and BSE rules. These cases are, however, inapposite. Although the district court in *Rolf* denied a motion to dismiss claims alleging violations of Rule 405 of the New York Stock Exchange ("NYSE") and Art. III, § 2 of the NASD Rules, the circuit court affirmed on other grounds, expressly stating that it did not reach the question of "whether there is an implied cause of action under the NYSE rule or the NASD constitution." 570 F.2d at 41. In *Vetter*, the court dismissed a complaint without prejudice for failure to allege fraud with particularity, again without reaching the question of whether a plaintiff could assert a private right of action based upon an alleged violation of NYSE Rule 408. 481 F.Supp. at 66.

While the Second Circuit has not yet ruled on whether a private right of action can be maintained for violation of stock exchange rules, *Leist v. Simplot*, 638 F.2d 283, 296 n. 11 (2d Cir.1980), *aff'd sub. nom.*

*Merrill Lynch Pierce Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), many recent authorities weigh against the implication of such a right. The right to assert a private right of action in general has been narrowed in recent years by the decisions of the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) and *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). The effect of these decisions in the context of implied rights of action under NASD and stock exchange rules has been discussed at length in *Colman v. D.H. Blair & Co.,* 521 F.Supp. 646, 648–55 (S.D.N.Y.1981) and ratified in several very recent cases, including *Jaksich v. Thomson McKinnon Securities, Inc.,* 582 F.Supp. 485, 499–501 (S.D.N.Y.1984) and *Klock v. Lehman Brothers Kuhn Loeb Inc.,* 584 F.Supp. 210, 216–18 (S.D.N.Y. 1984). Without reiterating the discussion of the Supreme Court cases so clearly set forth in *Colman,* suffice it to say that I find its logic to be fully applicable to the instant case. Noting the *Transamerica* and *Touche Ross* Courts' requirement that congressional intent is the factor to be considered most heavily in determining whether a private right of action exists, the *Colman* court set forth four factors suggesting that Congress did not intend to create private rights of action under stock exchange rules. The factors are as follows:

(1) the statutory bases for the NYSE and NASD Rules, see 15 U.S.C. §§ 78f(b)(5) and (6) and 78o–3(b)(6) and (7), do not confer any rights or proscribe any conduct by exchange or association members, ...

(2) there is apparently no mention of this subject in the legislative history; ...

(3) there are several express provisions in the Act creating private remedies under specified circumstances, suggesting that the failure to provide for private actions for violations of exchange or association rules was not an oversight, ... and

(4) the statutory scheme provides for self-regulation and enforcement by exchanges and associations, suggesting that Congress has selected this as the exclusive means of enforcement....

521 F.Supp. at 654 (citations omitted). *See also* cases cited in *Klock, supra,* 584 F.Supp. at 217 nn. 12 and 13. In addition to his failure to plead the specific rules which he alleges have been violated by the defendants, plaintiff cannot overcome the burden of the four-factor test imposed by *Colman.* In addition, plaintiff cannot demonstrate that "the rules allegedly violated impose "an explicit duty unknown to common law," a factor which would weigh in favor of permitting a private right of action. *See, e.g., Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178, 182–83 (2d Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966). Several cases have, in fact, dismissed implied causes of action based on Article III, § 2 of the NASD Rules, one of the same violations plaintiff specifies in his motion papers here. *See Colman, supra,* 521 F.Supp. at 655 (Article III, § 2 "lacks the requisite precision in defining rights and obligations to satisfy the *Colonial* standard, and adds little or nothing to duties imposed by statute or by common law"). *See also Klock, supra,* 582 F.Supp. at 500 (quoting *Colman* ).

For the reasons set forth above, plaintiff's third cause of action is dismissed.

*Common Law Fraud*

■ Defendants' move to dismiss the fourth cause of action for failure to allege fraud with particularity as required by Rule 9(b). It is well settled in this Circuit that a plaintiff alleging fraud must specify:

(1) Precisely what statements were made on what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same,

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants 'obtained as a consequence of fraud.'

*Todd v. Oppenheimer & Co.,* 78 F.R.D. 415, 420–421 (S.D.N.Y.1978). It is also true that when a plaintiff claims fraud on the part of multiple defendants, "*each* defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." *Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518, 522 n. 7 (S.D.N.Y.1977) (citations omitted).

As noted *supra* at 4, plaintiff alleges that the fraudulent act here in issue is defendants' "improper distribution of proceeds in connection with the sale of Western Consortium, Inc. Stock." Plaintiff's Memorandum at 13. *See also* Complaint ¶¶ 39–42. Plaintiff essentially complains that defendants committed fraud because Taormina misrepresented that[1] he would follow plaintiff's instructions with regard to the Western Consortium stock[2] he would forward the proceeds from the sale of the stock to plaintiff.

■ Plaintiff's fraud claim must fail for several reasons. First, the complaint fails to allege certain facts required by *Todd, supra,* namely the time and place of the alleged misrepresentations by defendants, the manner in which plaintiff was misled, and what the defendants gained by allegedly defrauding plaintiff.

Second, plaintiff has not alleged any basis for its claim of fraud against Norbay. *See Jacobson, supra.* Plaintiff's reliance on *Marbury Management, Inc. v. Kohn,* 629 F.2d 705 (2d Cir.), *cert. denied sub nom., Wood Walker & Co. v. Marbury Management, Inc.,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980), to support Norbay's liability based on a respondeat superior theory is misplaced. While that case did state that § 20(a) of the 1934 Act did not supplant respondeat superior liability, *Mar-*

*bury* discussed only respondeat superior liability *for violations of the Act.* Because I have concluded that plaintiff has not alleged any viable causes of action against plaintiffs for violations of the Act, *Marbury* cannot serve as a basis for fraud liability against Norbay.

For the reasons set forth above, plaintiff's fourth cause of action must be dismissed.

*Breach of Fiduciary Duty*

Defendant's move to dismiss the fifth cause of action for failure to comply with Rule 9(b) and failure to state a claim. Defendants urge that plaintiff has failed to state a claim for breach of fiduciary duty due to the omission of details of the nature of plaintiff's instructions to defendants, the basis of the fiduciary relationship and the identity of the third party to whose account plaintiff's proceeds were allegedly transferred. Defendants cite no authority to support this contention.

■ I must first note that Rule 9(b)'s particularity requirement applies only to allegations of fraud or mistake, and therefore cannot serve as a basis for dismissal of this cause of action. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1297 at 405 (1969). As to defendants' allegation that plaintiff has failed to state a claim for breach of fiduciary duty, I find that the complaint clearly details the instructions of plaintiff which were allegedly not followed by defendants. The identity of the third party to whom the proceeds were allegedly transferred is presumably unknown to any of the parties at this time and should surface during discovery. The nature of the fiduciary relationship between plaintiff and defendants is sufficiently alleged in the complaint, as a broker owes a fiduciary duty to its client. *See Rolf, supra,* 570 F.2d at 45; 1 A. Scott, The Law of Trusts § 12.10 at 134 (1967).

---

**1.** In *Chemical Bank,* the court stated:

The purpose of § 10(b) and Rule 10b–5 is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price

known to be inadequate or for a consideration known to the buyer not to be what it purports to be.
726 F.2d at 943.

**2.** Nowhere in its papers does plaintiff specify the BSE rule allegedly violated by defendants.

Thus, defendants' motion to dismiss the plaintiff's fifth cause of action must be denied.

*Conversion*

Defendants' move to dismiss the sixth cause of action for failure to comply with Rule 9(b) and failure to allege an "act of conversion." For the same reason discussed above, Rule 9(b) is also inapplicable to the conversion claim.

▮ Defendants contend that this cause of action is also insufficient because plaintiff does not allege that defendants ever received the proceeds in issue or appropriated the proceeds to their own use, and does not allege any facts concerning the disposition of the proceeds by defendants. Considering that an act of conversion is an unauthorized exercise of the right of ownership and dominion over property of another to the exclusion of the owner's rights, *Meyer v. Price,* 250 N.Y. 370, 165 N.E. 814 (1929), I find that paragraphs 21 through 27 of the complaint, and Exhibit E attached thereto, sufficiently allege an act of conversion by defendants. The *proof* of these allegations, of course, remains for trial.

Therefore, defendants' motion to dismiss the sixth cause of action is denied.

*Punitive Damages*

Plaintiff seeks punitive damages on his fourth and fifth causes of action. Because the fourth cause of action has been dismissed, plaintiff's demand for punitive damages on that claim must also be dismissed.

As to the punitive damages demanded on plaintiff's fifth cause of action, a conflict of law issue is presented which is somewhat unusual in nature. None of the cases cited by the parties are helpful to its resolution.[3]

A federal court sitting in a diversity case must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Because plaintiff's federal claims must be dismissed and because this is a diversity case, the above principle is fully applicable here.

The most recent pronouncement by a New York court in the area of the choice of law applicable to a punitive damages claim against a broker is *Knieriemen v. Bache Halsey Stuart Shields,* 74 A.D.2d 290, 427 N.Y.S.2d 10 (1st Dep't), *appeal dismissed,* 50 N.Y.2d 1021, 410 N.E.2d 745, 431 N.Y.S.2d 812, *appeal dismissed,* 51 N.Y.2d 970, 416 N.E.2d 1055, 435 N.Y.S.2d 720 (1980). There, plaintiff, a Louisiana resident, alleged causes of action based on breach of contract, negligence, fraud and churning against defendant, a New York Corporation. The *Knieriemen* court first determined that the contractual term requiring that New York law govern the contract did not require the same law to govern the tort claims. 427 N.Y.S.2d at 12–13. Thereafter, the court applied the choice of law factors set out in *Matter of Crichton,* 20 N.Y.2d 124, 133–34, 228 N.E.2d 799, 805, 281 N.Y.S.2d 811, 819 (1967), which require a court

'to isolate the issue, next to identify the policies embraced in the laws in conflict,

---

**3.** Plaintiff alleges, for example, that California law, specifically West's Ann.Civ.Code § 3294, is applicable to the breach of fiduciary duty claim based on the cases of *Freschi v. Grand Coal Venture,* 551 F.Supp. 1220 (S.D.N.Y.1982) and *Arneil v. Ramsey,* 550 F.2d 774 (2d Cir.1977). While both of these cases do stand for the proposition that the law to be applied with respect to a cause of action for fraud in connection with a securities transaction is the law where the "economic impact is felt," normally the plaintiff's residence," this principle was held applicable to claims under § 10(b) of the 1934 Act. *Freschi, supra,* 551 F.2d at 1225; *Arneil, supra,* 550 F.2d at 779. Because I have found that plaintiff has

failed to state any claims under the Act, *Freschi* and *Arneil* are not helpful to plaintiff's argument that California law should be applied because plaintiff resided there during all times relevant to this action. *Cf. Klock v. Lehman Brothers Kuhn Loeb Inc., supra,* 584 F.Supp. at 210 (Connecticut law applicable where Connecticut resident was allegedly injured due to defendants' fraudulent activities (citing *Arneil v. Ramsey, supra,* 550 F.2d at 780).

Defendants' authorities also fail to resolve the conflicts issue, as they do not address the precise question of what law should govern a demand for punitive damages in a breach of fiduciary duty claim.

and finally to examine the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied.'

427 N.Y.S.2d at 13 (citing *Dym v. Gordon,* 16 N.Y.2d 120, 124, 209 N.E.2d 792, 794, 262 N.Y.S.2d 463, 466 (1965)).

The *Knieriemen* court determined that Louisiana law should apply to the punitive damages claim. In so doing, the court found that both New York and Louisiana had strong policies against awarding punitive damages. Whereas New York would award punitive damages "where the 'wrong complained of is morally culpable, or is actuated by evil and reprehensible motives,'" 427 N.Y.S.2d at 13 (citing *Walker v. Sheldon,* 10 N.Y.2d 401, 404, 179 N.E.2d 497, 498, 223 N.Y.S.2d 488, 490 (1961)), Louisiana restricted the availability of punitive damages, based on a policy that "a plaintiff should recover only that which will fairly and reasonably compensate him." 427 N.Y.S.2d at 13 (citation omitted). The court found that while Louisiana would have an interest in compensating the plaintiff, New York would be interested in "punishing the New York defendant for its misconduct and to provide a wholesome example," *id.,* the New York policies would not be furthered because the defendant was not found to possess evil or reprehensible motives and it was the defendants' Louisiana agent that committed the act complained of.

In the instant case, the policies and law regarding the availability of punitive damages under New York law are those explained in *Knieriemen.* The specific California law which plaintiff seeks to apply here, § 3294 of the Civil Code, provides:

(a) In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

The California courts have specifically held that a breach of fiduciary duty, if proven, may warrant the imposition of punitive damages based on a theory of implied fraud. *See Nicholson v. Rose,* 106 Cal. App.3d 457, 462, 165 Cal.Rptr. 156, 160 (Cal.Ct.App.1980); *Devers v. Greenwood,* 139 Cal.App.2d 345, 293 P.2d 834, 838 (Cal. Dist.Ct.App.1956). Thus it would appear more likely that the plaintiff here could obtain punitive damages under California law on his breach of fiduciary duty claim.

Both New York and California law, however, express a policy toward using punitive damages to punish the wrongdoing party. Unlike *Knieriemen,* where Louisiana punitive damages law was applied in part because the wrongdoing party was defendants' Louisiana agent, both defendants here allegedly committed wrongful acts in New York. Also in *Knieriemen,* Louisiana punitive damages law expressed a policy to compensate the plaintiff. The California statute at issue here expresses no similar policy. In addition, the plaintiff's account here was maintained in New York.

■ In view of the above considerations, I find that it is appropriate to apply New York punitive damages law to plaintiff's breach of fiduciary duty claim. Under that law, the allegations in the complaint can hardly be construed to allege that defendants' behavior was morally culpable or actuated by evil and reprehensible motives. For that reason, plaintiff's claim for punitive damages on the breach of fiduciary duty claim must be dismissed.

*Amendment of the Complaint*

■ In addition to opposing defendants' motion to dismiss, plaintiff has moved to amend the complaint to add causes of action based on breach of oral contract, breach of written contract, negligence and action on account. Because a responsive pleading has not yet been served by defendants, plaintiff may so amend his complaint without obtaining leave of court. Fed.R.Civ.P. 15(a).

*Conclusion*

For the reasons set forth above, defendants' motion to dismiss the first, second, third and fourth causes of action, as well as the demand for punitive damages, is granted. As to the fifth and sixth causes of action, defendants' motion is denied. Plaintiff may also amend his complaint in a manner consistent with this opinion within twenty (20) days of the date of this order.

SO ORDERED.