**Delo H. CASPARY, Plaintiff,**

**v.**

**The LOUISIANA LAND AND EXPLORATION COMPANY, John G. Phillips, Richard T. Baker, R. Manning Brown, Jr., John P. Harbin, Herman Ponder, Arthur P. Taylor, W.R. Timken, Jr., Joseph F. Toot, Jr., E.L. Williamson, Louis H. Wilson and CT Corporation, Defendants.**

**The LOUISIANA LAND AND EXPLORATION COMPANY, Counterclaim-Plaintiff,**

**v.**

**Delo H. CASPARY, et al., Counterclaim-Defendants.**

**No. 83 Civ. 4065.**

United States District Court, S.D. New York.

July 19, 1983.

---

Steven Greiner, Wilkie, Farr & Gallaher, New York City, for plaintiffs.

Raymond Falls, Cahill Gordon & Reindel, New York City, for defendants.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

Plaintiff Delo Caspary commenced this action against the Louisiana Land and Exploration Company ("LL & E") and the members of its board of directors alleging that defendants violated section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and Rule 14a–9 promulgated thereunder, 17 C.F.R. § 240.14a–9 (1982) ("Rule 14a–9") by disseminating materially misleading proxy materials in connection with defendants' campaign for re-election at LL & E's May 12, 1983 shareholders' meeting.[1] Plaintiff seeks an injunction in-

---

1. Named as defendants were the following members of the LL & E board of directors: John G. Phillips, Richard T. Baker, R. Manning Brown, Jr., John P. Harbin, Herman Ponder,

validating the results of the May 12 election and requiring resolicitation of proxies and corrective disclosures by defendants. Pursuant to Rule 42(b), Fed.R.Civ.P., the court on June 21, 1983 held a separate trial on the claim that defendants' proxy materials were materially misleading with respect to the significance of LL & E's profits for the first quarter of 1983. With respect to this claim, the court makes the following findings of fact and conclusions of law pursuant to Rule 52(b), Fed.R.Civ.P.

### Background

LL & E is a Maryland corporation with its principal place of business in New Orleans, Louisiana. LL & E is engaged primarily in exploration for and development of petroleum, natural gas and minerals. The capital stock of LL & E is registered with the Securities and Exchange Commission ("SEC") and is traded on the New York Stock Exchange.

In 1980, LL & É earned profits of 180.2 million dollars or $4.74 per share. In 1981 those figures dropped to 145.2 million or $3.82 per share and in 1982 they fell again to 76.3 million dollars or $2.01 per share. Beginning in the latter part of 1982, LL & E's staff began the preparation of the company's financial forecast for 1983 ("1983 forecast"). Those figures, which were shown to LL & E's board of directors at its February 9, 1983 meeting, predicted that the company's 1983 earnings would decline to 60.6 million dollars or $1.60 per share.

Plaintiff, a resident of Texas and owner of 117,100 shares of capital stock of LL & E, is chairman of the Louisiana Land Committee for New Management (the "Committee"), which was formed to solicit from LL & E's shareholders proxies for the Committee's candidates for the LL & E board of directors. On April 7, 1983, the Committee initiated its proxy campaign with a letter introducing to LL & E's shareholders the Committee's nominees and their business backgrounds. That letter emphasized that the most important issue in the upcoming proxy battle was the decline in LL & E's earnings for the period from 1980 to 1982. During the course of the proxy battle, defendants, who sought to retain their positions on the LL & E board of directors, communicated with the shareholders on a number of occasions.

On May 12, 1983, the annual meeting of the LL & E shareholders took place. That afternoon when the polling had ended, John G. Phillips, chairman of the LL & E board of directors, held a press conference announcing his belief that the tabulation of the votes would indicate that the shareholders had voted for the incumbent board of directors. On May 25, 1983, it was disclosed that a preliminary count of the votes cast at the May 12 shareholders' meeting, defendants had obtained a majority. This litigation ensued.

### Discussion

■ Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) ("section 14(a)") makes it unlawful for "any person ... in contravention of such rules and regulations as the [SEC] may prescribe ... to solicit ... any proxy ... in respect of any security...." Rule 14a-9, promulgated by the SEC, prohibits misleading statements and omissions in proxy materials. Specifically, the rule provides (emphasis added):

(a) No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, *containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements*

Arthur R. Taylor, W.R. Timkin, Jr., Joseph F. Toot, Jr., E.L. Williamson, and Louis H. Wilson. For purposes of facilitating an award of injunctive relief, plaintiff also named as a defendant the CT Corporation, the Inspector of Election

for the shareholders' vote at LL & E's May 12 meeting. References hereinafter to "defendants" refer only to the individual defendants and do not include LL & E or the CT Corporation.

*therein not false or misleading* or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has been false or misleading.

Whether proxy information is misleading with regard to a material fact is an issue to be determined with a view to the context in which the information was generated. As the Second Circuit has stated:

> Rare indeed is the proxy statement whose language could not be improved upon by a judicial craftsman sitting in the serenity of his chambers.... This is particularly so where the statement is prepared in the "hurly-burly" of a contested election.... Fair accuracy, not perfection is the appropriate standard.

*Kennecott Copper Corp. v. Curtiss-Wright Corp.*, 584 F.2d 1195, 1200 (2d Cir. 1978).

■ Plaintiff argues that a press release, letters to the shareholders and other statements issued by defendants as part of the proxy fight were misleading with respect to material facts relevant to LL & E's future performance. Specifically, plaintiff charges that defendants suggested that the first quarter 1983 figures represented a reversal of the prior earnings decline, even though they knew from their 1983 forecast that the first quarter figures were an aberration. Plaintiff contends that defendants failed to disclose information indicating that the earnings for the last three quarters of 1983 were sure to decline from the level of earnings for the corresponding quarters of 1982. Defendants do not dispute that facts relevant to the determination of LL & E's future performance are material within the meaning of Rule 14a–9. Rather, defendants argue that their proxy materials merely repeated historical data concerning the first quarter 1983 profits and consequently were not misleading with

regard to any fact relevant to LL & E's earning potential.

As the first example of defendants' allegedly misleading communications, plaintiff cites an article published on April 15, 1983 in the *Wall Street Journal* which recounted an interview with LL & E board chairman Phillips.[2] In that interview, Phillips released preliminary figures for the quarter ending on March 31, 1983 indicating net earnings of 26.6 million dollars or 70 cents per share, or almost double the earnings for the first quarter of 1982. Phillips also stated in the interview that LL & E's first quarter profits were due in part to reduced exploration and drilling costs and an increased oil recovery rate in certain fields, particularly the Jay Field located in Florida.

Although LL & E accelerated by more than a week its usual timetable for reporting its first quarter earnings, plaintiff does not argue that this rush to present those figures rendered Phillips' statements inaccurate. Neither does plaintiff claim that the reasons Phillips articulated for the first quarter profits were untrue. Rather, plaintiff argues that the statement of reasons was misleading because defendants knew, at that time, on the basis of the material contained in their 1983 forecast, that their exploration costs could not remain at that low level and that the increased recoveries in the Jay Field would soon taper off.

Contrary to plaintiff's contention, Phillips' statements were not misleading to the shareholders because those statements simply do not suggest any conclusion regarding the likely continuation of the factors responsible for the first quarter success. On the basis of Phillips' statements, the LL & E shareholders were as likely to conclude that the higher recovery rate and low exploration costs would not continue as that they would.[3]

---

**2.** Plaintiff also introduced an April 17, 1983 article from a Louisiana newspaper, the *Times Picayune*. This article merely recounted the April 15 *Wall Street Journal* article and did not reflect any additional information provided by defendants.

**3.** Plaintiff also argues that the *Wall Street Journal* article describes LL & E's financial outlook as "rosier." The evidence establishes that it was the reporter who so characterized Phillips' discussion and that Phillips himself did not hazard a prediction regarding LL & E's future.

Because Phillips did not make any predictions regarding future oil recoveries and exploration costs, he did not omit "any material facts necessary in order to make [his] statements not misleading." Rule 14a–9. Defendants were under no obligation to release their internal projections regarding oil recovery rates or exploration costs to disabuse those shareholders who, of their own accord, might think that successful first quarter results necessarily would result in similar success during the remainder of the year. The securities laws do not generally require the disclosure of such necessarily speculative information.

> "Although the SEC now *permits* disclosure of [certain] projections ... no company is *required* by the SEC to issue projections.... Nor has any court ever imposed liability for failure to include projections in a registration statement." *Straus v. Holiday Inns, Inc.*, 460 F.Supp. 729 (S.D.N.Y.1978) (citations omitted) (emphasis in original). Nor does there appear to be any case in which a court has imposed liability for failure to disclose projections in other contexts. "Ordinarily ... the courts discourage presentations of future earnings, appraised asset valuations and other hypothetical data in proxy materials." *Kohn v. American Metal Climax, Inc.*, 458 F.2d 255, 265 (3d Cir.), *cert. denied*, 409 U.S. 874 [93 S.Ct. 120, 34 L.Ed.2d 126] (1972).

*Billard v. Rockwell International Corp.*, 526 F.Supp. 218, 221 (S.D.N.Y.1981), *aff'd*, 683 F.2d 51 (2d Cir.1982).

The information omitted from the Phillips interview is materially different from the omissions found actionable in cases cited by plaintiff. In those cases, the defendants omitted historical facts necessary to prevent statements about the present condition of a company from being misleading.[4] In contrast, in the instant case, plaintiff's argument necessarily amounts to a claim that Phillips' statements as to LL & E's present condition were rendered misleading by his omission of predictions regarding LL & E's future costs and revenues. The court concludes that Phillips' undisputedly accurate report as to the condition of LL & E at that time suggested no misimpression as to the company's future performance and therefore requires no corrective disclosure of defendants' predictions as to that performance.

Plaintiff next cites defendants' April 18 press release which states that the first quarter 1983 earnings "increased significantly." This statement unquestionably was true and like the statements discussed earlier contained no implicit prediction about the course of those earnings in the future. The press release also trumpeted the reduced exploration charges incurred in the first quarter of 1983, a disclosure which is not misleading under Rule 14a–9 for the reasons discussed above.

Plaintiff places particular emphasis on the following statement contained in a letter defendants sent to shareholders on April 20, 1983 (emphasis in original): "Caspary would have you believe that your Company's earnings are declining. ... *Far from declining ... earnings for the first quarter were up almost 100% over the comparable period of the preceding year."* In fact, LL & E's earnings increased for each of the five quarters between the first quarter of 1982 and the first quarter of 1983. Defendants' statement therefore was correct as a matter of historical description; it did not purport to be more.

Plaintiff cites only one instance during the proxy fight when defendants allegedly were responsible for assertions that the first quarter 1983 earnings were

---

**4.** For example in *Kaiser-Frazer Corp. v. Otis & Co.*, 195 F.2d 838 (2d Cir.), *cert. denied*, 344 U.S. 856, 73 S.Ct. 89, 97 L.Ed. 664 (1952), the Second Circuit held that defendants misleadingly had attributed to the last month of a fiscal year excess inventory discovered during that month but actually relevant under standard accounting principles to the entire preceding year. In *GAF Corp. v. Heyman*, No. 83 Civ. 2182, (S.D.N.Y. June 8, 1983), the court held misleading the failure of a candidate for director to disclose the historical fact of pending litigation charging him with breach of fiduciary duty.

typical or predictive. Those statements were made by Thomas Petrie, managing director of LL & E's investment banker, First Boston Corporation. During the course of the proxy fight, Petrie told a number of major institutional shareholders of LL & E that the first quarter 1983 earnings did not reflect any factors which "should be adjusted out as unusual or nonrecurring." Plaintiff contends that defendants' 1983 forecast demonstrated that the high oil discovery rate and low exploratory charges for the first quarter of 1983 were in fact unusual. Plaintiff argues that Petrie's characterization of the first quarter earnings consequently was misleading.

As an initial matter, the court notes that plaintiff has not demonstrated whether Petrie contacted shareholders at defendants' behest or simply was acting as an independent investment counselor who had read LL & E's interim report for the first quarter of 1983 and had drawn his own conclusions therefrom. In any event, the evidence establishes that Petrie tempered considerably his statements regarding the significance of the first quarter 1983 figures. Petrie summarized his comments to certain LL & E shareholders as follows:

> The comparison of the first quarter 1983 against the first quarter 1982 showed a very big increase, virtually a doubling of earnings. And that further comparisons may not be that favorable because of higher base levels in the prior year's quarters to compare against. And there was some discussion of [natural] gas [production] curtailments [by the government]. Gas curtailments started to get bad in April and got a lot worse in May for the industry. And that certainly was a factor that, you know, was an uncertainty to deal with. So in the discussion ... in some cases were points such that, you know, that may not cause continuation [of the first quarter earnings level]. ...

Thus, although Petrie did tell certain shareholders that there were no "unusual" factors responsible for the first quarter earnings, he contemporaneously cautioned the investors that the high level of earnings increase might not continue. On balance, the court finds that Petrie's statements regarding the earnings potential of LL & E were sufficiently qualified so that in the context of the proxy battle, they were not misleading.

▮ Plaintiff also stresses a full page *Wall Street Journal* advertisement written and paid for by W.R. Timkin, Sr., a prominent investor and father of defendant W.R. Timkin, Jr., an LL & E board member. The evidence indicates that Timkin Jr. saw the advertisement prior to its publication and volunteered no corrections in the text in which Timkin Sr. stated: "I believe this decline [in LL & E's earnings] has now been curbed, as indicated by the first quarter increase in earnings." Plaintiff argues that Timkin Sr.'s statement implies that LL & E's earnings will not decline in the future, and that this implication is misleading in view of defendants' internal projections to the contrary.

Even assuming that the statement by Timkin Sr. was misleading with regard to LL & E's future earnings, the court finds that plaintiff has failed to demonstrate sufficient involvement by the defendants in the publication of that statement to subject them to liability under the securities laws. Section 14(a) makes it unlawful "to solicit" a proxy in a manner which violates the SEC rules. That provision thus prohibits certain conduct by individuals who are involved in the solicitation of proxies. Neither section 14(a) nor Rule 14a–9 suggests that liability may attach in an instance in which a defendant has not actively solicited proxies, but merely has observed another doing so on behalf of the same camp in the proxy dispute. Plaintiff has not cited and the court is not aware of any authority suggesting that a party can be held to have "solicited" proxies in contravention of section 14(a) absent some showing of active involvement by that person in the preparation or dissemination of the allegedly misleading materials.

In the instant case, the record demonstrates that Timkin Jr., at most, did noth-

ing to prevent publication of the *Wall Street Journal* advertisement bearing his father's name. Such evidence is insufficient to establish that it was Timkin Jr. who solicited proxies by means of that advertisement and therefore is insufficient to subject Timkin, Jr. to liability under section 14(a). *Cf. Lewis v. Dansker,* 68 F.R.D. 184, 194 (S.D.N.Y.1975) (finding solicitation within the meaning of section 14(a) where defendant was "involved in" the board of director's approval of the distribution of improper proxy materials).[5]

Finally, plaintiff asserts that the misleading nature of defendants' proxy materials is demonstrated by Phillips' alleged statement in his press conference immediately after the polling ended that LL & E's overall profits for 1983 would be less than those for 1982. Even assuming that Phillips did make such a statement, such post-election caution does not render misleading defendants' proxy materials, since, as discussed above, those materials did not necessarily suggest a contrary conclusion with regard to LL & E's earnings for the remainder of 1983.

### Conclusion

The court therefore concludes that with respect to LL & E's earnings for the first quarter of 1983, defendant's proxy communications neither contained misleading statements nor omitted material facts necessary to make the statements in those communications not misleading. Accordingly, the court dismisses that portion of the complaint alleging that defendants' representations as to LL & E's first quarter 1983 earnings violated 15 U.S.C. § 78n(a) and 17 C.F.R. § 240.14a–9.

So Ordered.

---

5. Plaintiff has not cited and the court is not aware of any authority suggesting that a defendant may be found to have solicited proxies simply because that defendant knew of the distribu-tion of proxy materials by a close relative. In the absence of any authority, the court declines to engraft such a principle of vicarious liability onto the regulations governing proxy battles.