**Marjorie D. ALFUS, on Behalf of Herself and All Others Similarly Situated, Plaintiff,**

v.

**PYRAMID TECHNOLOGY CORP., Richard D. Dolinar, William Shellooe, William D. Rollnick, Stephen G. Tolchin, and Kent L. Robertson, Defendants.**

No. C–89–20184–RFP.

United States District Court, N.D. California.

March 30, 1990.

---

William S. Lerach, Milberg Weiss Bershad, Spechthrie & Lerach, San Diego, Cal., Stephen Lowey, William J. Ban, Lowey Dannenberg & Knapp, P.C., New York City, for plaintiff.

Dana Haviland, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Cal., for Pyramid Technology.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

PECKHAM, District Judge.

This matter is before the Court upon defendants' motion to dismiss the above entitled action. The Court has fully considered the submissions and arguments of the parties. GOOD CAUSE appearing therefor, the defendants' motion to dismiss is GRANTED for the reasons set forth herein. Plaintiff is GRANTED 30–days leave to amend her complaint. The stay of discovery, which was granted on August 11, 1989 pursuant to defendants' motion and continued on September 15, 1989, will be lifted in accordance with limitations set by the Court at the status conference to be held on April 27, 1990.

## INTRODUCTION

This is a securities fraud class action brought against Pyramid Technology Corp. ("Pyramid"), several of its officers and one of its outside directors ("Defendant Rollnick"). Defendants move to dismiss the complaint on the grounds that plaintiff has failed to state a claim under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, and fails to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). In addition, defendants seek the dismissal of the secondary liability claims of conspiracy and aiding and abetting, the insider trading claim and the negligent misrepresentation claim. Defendant Rollnick joins the motion to dismiss, and moves on his own behalf to strike the allegations of conspiracy against him and to dismiss the allegations of insider trading.

Plaintiff opposes the motions, citing the strong presumption in favor of plaintiffs at this early stage of litigation, and charging defendants with failing to disclose known adverse information about "Pyramid's eroding financial health" while at the same time engaging in significant "insider" stock sales.

## FACTUAL BACKGROUND

Pyramid produces super minicomputer systems, and dominates the so-called UNIX computer market. Complaint ¶¶ 6, 13. Pyramid's stock price rose steadily from late 1987 until early 1989, but dropped relatively sharply on March 22 and 23, 1989. *Id.* ¶ 31. The stock sold for $5.50 a share in November, 1987, rose to a high of $18.75 a share on March 13, 1989, and declined to $14.00 per share on March 22, 1989, when Pyramid cautioned three securities analysts to lower their estimates of Pyramid's earnings for the quarter ending March 31, 1989.

The plaintiff class consists of all purchasers of Pyramid stock between October 31, 1988, the date that Pyramid reported its results for fiscal 1988, and March 23, 1989, the day after Pyramid made its announcement to the securities analysts. The

named plaintiff, Marjorie Alfus, purchased 1000 shares of Pyramid stock at $16.25 a share on January 9, 1989, and 1200 shares at $18.75 on February 7, 1989. *Id.* ¶ 5.

The complaint makes essentially two allegations concerning the Rule 10b–5 claim. Pyramid allegedly represented that there was an increasing demand for its product when in fact it knew that its dominant market share made it unlikely that the Company would duplicate past growth rates. *Id.* ¶ 19. Plaintiff bases its allegation on statements made in several press releases and an annual and quarterly report. Plaintiff also asserts that a statement introducing Pyramid's new product, the Corporate MIServer, was misleading for failing to disclose that there were no "firm" orders for the product. *Id.* ¶ 27. Plaintiff also contends that the March 22, 1989 inquiry made by the securities analysts is alone enough to establish defendants' failure to disclose material information that it had well before that date.

Count I further alleges that, in addition to being liable as direct participants, each defendant also conspired or aided and abetted the scheme to artificially maintain the price of Pyramid's common stock for their personal benefit. Count II alleges that defendants illegally sold their stock based upon inside information, and count III contends that defendants are liable for negligent misrepresentation.

## DISCUSSION

### I. LEGAL STANDARD ON MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants move to dismiss all counts for failure to state a claim upon which relief can be granted.[1] In considering defendants' motion to dismiss, the Court must presume that the plaintiff's allegations are true, and grant the motion only if it appears "beyond doubt" that the plaintiff can prove no set of facts entitling her to relief. *Sun Savings & Loan Assoc. v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.

---

**1.** Defendant Rollnick joins the motion to dismiss, and moves on his own behalf to strike the

allegations of conspiracy against him and to dismiss the allegations of insider trading.

1987); *Federal Sav. and Loan Ins. Corp. v. Musacchio,* 695 F.Supp. 1053, 1058 (N.D. Cal.1988).

## II. COUNT I: VIOLATION OF SECTION 10(b) AND RULE 10b–5 [2]

The Court finds "beyond doubt" that plaintiff is not entitled to relief on the facts as presently set forward in her complaint. There are sound historical and factual bases for each of the four statements of financial results. There are no facts to support plaintiff's allegations that omissions by corporate insiders made these statements misleading, or that the statements were made other than in good faith. As to the statement introducing the Corporate MIServer, there are no allegations in the complaint that corporate insiders were aware of significant technical problems with the product and were reckless in not disclosing such difficulties.

### A. *Factual Background*

The crux of plaintiff's theory is that beginning with an October 31, 1988 press release, defendants issued five highly favorable public statements in a concerted effort to sustain Pyramid's public image as enjoying increasing growth in revenues and profitability, thereby maintaining Pyramid stock at an inflated price to their personal benefit. Defendants characterize the complaint as alleging that reporting past earnings and revenue growth implies future growth and success, and that Pyramid's "fraud" was its failure to make a prediction of future revenues and earnings after creating an inference that growth would continue. The five allegedly misleading statements will be discussed under this framework.

1. *October 31, 1988 press release:* Pyramid issued a press release carried on the Business Wire which announced its earnings for both fiscal and fourth quarter 1988. Pyramid stated that it experienced record last quarter revenues and that net

income for the whole year had increased by 355%. Complaint ¶ 17. Defendant Lussier [3] was quoted as saying that the period marks the "ninth consecutive quarter of growth in revenues and of improving profitability." *Id.*

2. *December 1988 shareholders' letter:* In this letter, Chairman Lussier restated his earlier announcement of both fiscal and fourth quarter 1988 earnings. *Id.* ¶ 18. He then stated that, in the coming year, Pyramid "will enhance our leadership position in the high-performance commercial open systems market with more products, broader third-party relationships and even stronger customer support." *Id.*

3. *January 17, 1989 press release:* Pyramid announced its results for the first quarter of fiscal 1989, ended December 30, 1988. The statement reported gains in revenues but a *decline* in the Company's rate of profitability. *Id.* ¶ 21. The record revenues for the first quarter were attributed to "strong demand for our products by commercial customers in the United States, particularly in the telecommunications market."

4. *February 10, 1989 quarterly report:* Pyramid reported its results on Form 10–Q for the quarter ended December 30, 1988, and reiterated that "[t]he revenue growth in the first quarter resulted from strong demand for our products by commercial customers in the United States, particularly in the telecommunications market." *Id.* ¶ 23.

5. *February 13, 1989 press release:* Pyramid announced its new Corporate MIServer product. *Id.* ¶ 25. The securities analysts Goldman Sachs recommended Pyramid stock as a "buy" and stated that it believed *its* (Goldman Sachs') earning "estimates may prove conservative given the growing demand for cost effective UNIX–based solutions and the potential increase in the sales force productivity associated with these new models." *Id.* ¶ 26.

---

**2.** Defendants move to dismiss this claim under Rule 12(b)(6) for failure to state a claim and under Rule 9(b) for failure to plead fraud with particularity.

**3.** Richard H. Lussier is Chairman of the Board of Directors of Pyramid and is its President and Chief Executive Officer.

### B. *Legal Analysis*

Rule 10b–5, enacted under Section 10(b), makes it unlawful "[t]o make any untrue statement of fact or to omit to state a material fact necessary to make the statements made, in light of all the circumstances in which they were made, not misleading." 17 C.F.R. § 240.10b–5. The Supreme Court has set forth two basic prerequisites for a cause of action predicated upon Rule 10b–5. First, the plaintiff must show that the statements were misleading as to a material fact. *Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 986, 99 L.Ed.2d 194 (1988). Second, there must exist a legally cognizable duty to disclose corporate information. *Id.* 108 S.Ct. at 987 n. 17; *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 26 (1st Cir.1987).

### 1. Materiality

*Historical Financial Statements Do Not Imply Continued Growth, And, Without More, Are Not Misleading*

■ The most obvious example of a false or misleading statement is a misrepresentation of historic fact. *In re Apple Computer Securities Litigation*, 886 F.2d 1109, 1113 (9th Cir.1989). Plaintiff charged that Pyramid's four accurate statements of its past financial results were rendered false and misleading by the failure to disclose that Pyramid's dominant market share made it unlikely that the Company would duplicate past growth rates. Complaint ¶¶ 19, 22, 24. Plaintiff also asserted that an accurate statement introducing the Corporate MIServer was misleading for failing to disclose that there were no "firm" orders for the product. *Id.* ¶ 27.

Defendants argue that courts uniformly hold that reporting favorable past financial results does not imply future growth or success, nor may such an inference be drawn. *Caspary v. Louisiana Land & Exploration Co.*, 579 F.Supp. 1105 (S.D.N. Y.1983), *aff'd*, 725 F.2d 189 (2d Cir.1984) (dismissing claim alleging that quarterly operating results were misleading for failing to disclose reasons why future earnings likely would be lower); *Schwartz v. Novo Industri A/S*, 658 F.Supp. 795, 798 (S.D.N. Y.1987) (dismissing allegations that a company's statement that its sales had increased by 35% in 1982 and 28% in 1983 was misleading because it reinforced a positive "growth image" and implied a 20% to 25% annual growth in sales, since a statement confined to "past growth" in sales "says nothing about possible future growth"); *Weinberger v. Jackson*, No. C–83–20411–RPA, slip op. at 3 (N.D.Cal. Feb. 17, 1987) (misleading impression of future growth is not created by accurately reporting data which shows the historical growth record of the company).

In *Schwartz*, the court observed that the company's figures actually revealed that the growth rate was declining. Similarly, the complaint here acknowledges that Pyramid's own figures showed that the rate of revenue growth slowed from 14.5% in the quarter ended September 30, 1988 to 5.7% for the quarter ended December 30, 1988. Complaint ¶ 22. "[I]t strains credulity to think that truthful, objective statistics concerning a company's prior performance and revealing a decrease in its growth rate, serve to reinforce what Plaintiff characterizes as a false image of the company's growth." *Schwartz*, 658 F.Supp. at 798. The court found that no valid inference of wrongdoing could be attributed to the statement, that it was not misleading and did not state a cause of action under § 10(b). Plaintiff fails to cite any persuasive authority supporting her position that accurate financial reports may create a misleading impression about a company's future prospects, and the Court holds that plaintiff has failed to show that the four statements reporting accurate financial data are possibly misleading.

### 2. Statement Introducing the Corporate MIServer

■ Defendants further aver that "[j]ust as historical financial data does not imply future growth, it is impossible to infer a sales projection from an accurate statement introducing a new product." Defendants' Opening Brief at 8. The Court finds that a sales projection cannot be inferred from the bare announcement of the Corpo-

rate MIServer.[4]

■ In the complaint, as opposed to in its opposition papers, plaintiff did not adequately allege that defendants acted with the requisite scienter when it released the new product statement. *See In re Apple Computer Securities Litigation*, 886 F.2d at 1116–18. In the complaint, plaintiff states that the announcement of the "new Corporate MIServer was false and misleading because the Company failed to disclose the material information that it had no firm commitments from buyers." Complaint ¶ 27. It is assumed that investors will know that any product-in-development will run into a few snags. *Id.* at 1115. It is quite a different thing to say that a particular product has already developed problems so significant as to require months of delay. *Id.* It is only in her opposition papers that plaintiff raises the possibility that defendants were aware of significant technical problems with the Corporate MIServer which it did not disclose, and which tended to materially undermine Pyramid's optimism about its new product. *Id.* at 1116–18.

### 3. Duty to Disclose

Plaintiff raises several theories to support her contention that defendants had a duty to disclose that the Company was unlikely to continue its extraordinary growth rate. Defendants counter that Pyramid had no duty to predict that future revenue growth would not match past growth rates, since the Ninth Circuit has held that "the SEC does not require a company to disclose financial projections." *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1221 (9th Cir.1980) (summary judgment granted because no specific evidence alleged that disclosure of projections neces-

sary in order to make statements not misleading); *but see Marx v. Computer Sciences Corp.*, 507 F.2d 485, 489–92 (9th Cir. 1974) (partial disclosure of financial projections make them material facts, and 10b liability may attach if those projections not made completely and accurately).

#### a. *Item 303(a)(3)*

Plaintiff's first argument can be easily disposed of. In her opposition papers, *for the first time*, plaintiff states that pursuant to Item 303(a)(3) of SEC Regulation S–K,[5] "Pyramid had an affirmative legal duty, *irrespective of any false or misleading positive statements*, to disclose known adverse data about softening demand for its products and technological and/or 'startup' problems with the Corporate MIServer." Plaintiff's Opposition at 10.

■ There are several problems with plaintiff's argument. First, the allegation that Pyramid failed to comply with SEC disclosure rules was not made in the complaint. Second, the cases clearly state Rule 10b–5 does not require corporations to disclose financial projections. *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1221 (9th Cir. 1980); *In re Gap Securities Litigation*, C–87–4895 JPV, slip op. at 9, 1988 WL 168341 (N.D.Cal. Sept. 28, 1988). Third, Item 303(a)(3) applies only to annual reports filed on Form 10–K with the SEC. *See In re Gap Securities*, slip op. at 9; *In re Seagate Technology II Securities Litigation*, C–88–20489–RPA, slip op. at 16, 1989 WL 222969 (N.D.Cal. May 4, 1989). The alleged omission did not occur in Pyramid's Form 10–K (the complaint does not even mention Form 10–K), but rather in a press release and an annual report sent to shareholders. *See In re Gap*, slip op. at 9. Defendants did not violate Rule 10b–5 by

---

**4.** Plaintiff counters that defendants' argument distorts the complaint, because it analyzes each statement separately, rather than in the aggregate. Plaintiff's Opposition Brief at 14, citing *Marx v. Computer Sciences Corp.*, 507 F.2d 485, 491–92 (9th Cir.1974). Courts in analogous cases, however, routinely analyze complaints statement by statement to determine if any particular utterance can be considered false or misleading. *See In re Apple Computer Securities Litigation*, 886 F.2d 1109 (9th Cir.1989) (holding

that two of sixteen challenged statements raise triable issues of fact).

**5.** Item 303(a)(3) of SEC Regulation S–K requires disclosure in annual reports filed with the SEC of "any known trends that have had or that the registrant reasonably expects will have a material unfavorable impact on net sales or revenues or income from continuing operations."

failing to comply with Item 303(a)(3). *In re Gap Securities,* slip op. at 9; *In re Seagate Technology II,* slip op. at 16.

### b. *Insider Trading*

█ Plaintiff alleges that trading by insiders in corporate securities triggers an immediate duty to disclose all material facts possessed by them. Plaintiff's Opposition Brief at 10. However, plaintiff must identify some material omission that rendered misleading an actual affirmative statement by Pyramid before an obligation is triggered on the part of the company to reveal internal information that would not otherwise have to be disclosed. *See In re Apple Computer Securities Litigation,* 696 F.Supp. 490, 495 (N.D.Cal.1987), *aff'd in part and reversed in part on other grounds,* 886 F.2d 1109 (9th Cir.1989). Since plaintiff has failed to allege any material non-public information or omissions which should have been disclosed, it cannot be found at this juncture that the insiders had a duty to disclose.

### c. *False, Misleading or Incomplete Statements*

█ Plaintiff states that there is a legal duty to disclose whenever a corporation makes any affirmative statements which touch upon material facts or events. Plaintiff's Opposition Brief at 12. Plaintiff contends that even if Pyramid had no independent legal obligation to disclose unfavorable facts, "the Company *created* such an obligation once it elected to make statements about its projected outlook for fiscal 1989, and once it announced the availability of the Corporate MIServer to stockholders and clients." *Id.* The complaint, however, cites no such projections. Further, plaintiff has failed to sufficiently allege that defendants' statements were made other than in good faith.

### 4. Omission of material information which renders misleading an affirmative statement

█ Defendants state that failure to disclose a material fact violates Rule 10b–5 only if the omission rendered misleading some actual statement, Defendants' Opening Brief at 9, while plaintiff advances the proposition that a series of misleading statements and omissions, in the aggregate, is actionable. Plaintiff's Opposition at 14. Defendants contend that because the "complaint did not allege that Pyramid's financial reports contained any projection or prediction of sales, earnings or growth rates, the alleged omission—that past growth rates might not continue—did not render any particular statement misleading." Defendants' Opening Brief at 10; Defendants' Reply Brief at 10. Plaintiff, on the other hand, contends that "the complaint alleges a series of misleading statements and omissions which created, in the aggregate, a seriously misleading impression about Pyramid's financial health." Plaintiff's Opposition Brief at 14.

Defendants successfully distinguish plaintiff's authorities. In particular, plaintiff's citation of *Marx v. Computer Sciences Corp.,* 507 F.2d 485, 491–92 (9th Cir. 1974) is inapposite. *Marx* concerned a specific earnings projection for the current fiscal period, whereas the instant complaint does not cite any such forecast by Pyramid. Because an "earnings forecast is a shorthand description of the general financial well-being of a company; it creates an influential impression of the condition of the company in the eyes of the investing public," the *Marx* court held that whether the failure to disclose the existence and nature of each of the company's problems was an actionable omission was a question of fact. 507 F.2d at 492.

Plaintiff states that "Pyramid's predictions of continuing strong demand viewed in context with the material omissions concerning the Corporate MIServer and Pyramid's stagnating market share, clearly create a factual issue of fraud which cannot be resolved in a motion to dismiss." Plaintiff's Opposition Brief at 21, citing *Marx,* 507 F.2d at 492 (citations omitted). Plaintiff does not cite any projection or prediction by Pyramid that its past growth rate would continue into the future. Thus, there is no affirmative statement rendered misleading by the alleged failure to dis-

close that the past rate of growth might not continue. Plaintiff also fails to cite any prediction by Pyramid of orders or sales for the MIServer.

The courts have held that vague expressions of optimism as to future performance are mere "puffing" and are not actionable under the securities laws." *In re Gap*, slip op. at 16, citing *In re Apple Computer*, 672 F.Supp. 1552, 1572 (N.D.Cal.1987). Plaintiff's claim under Rule 10b–5 is dismissed with leave to amend if plaintiff can show that any of defendants' statements were projections or earnings forecasts, and not mere puffery.

### C. *Rule 9(b)*

■ Plaintiff and defendants agree that because plaintiff alleges fraud, she must comply with Rule 9(b) of the Federal Rules of Civil Procedure, which requires that in all averments of fraud, "the circumstances constituting fraud shall be stated with particularity." If the complaint states the time, place and nature of the alleged fraudulent activities, it satisfies Rule 9(b). *Semegen v. Weidner*, 780 F.2d 727, 735 (9th Cir.1985); *Bosse v. Crowell, Collier & MacMillan*, 565 F.2d 602, 611 (9th Cir.1977). However, "conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982).

■ Plaintiff contends that her complaint meets the Rule 9(b) standard because it sets forth the dates that each of the allegedly misleading statements were issued, identifies which defendant made each statement, quotes the specific language alleged to be false or misleading and specifies the adverse facts which were allegedly known to, but not disclosed by, defendants. Plaintiff's Opposition Brief at 24.

While it is certainly true that plaintiff cites to specific statements as misleading, "[p]laintiff has done nothing more than set forth conclusory allegations of securities fraud, conspiracy to commit securities fraud, and aiding and abetting in securities fraud, punctuated by a handful of neutral facts." *Semegen v. Weidner*, 780 F.2d at

731. Plaintiff's complaint contains generalities and conclusions to the effect that Pyramid's reports conveyed the impression of continued strong demand for the Company's products when it was unlikely to continue past growth rates. *See e.g.*, Complaint ¶¶ 19, 24. Pyramid's statements contain facts and figures whose accuracy has not been challenged. Yet plaintiff challenges the statements as misleading because they failed to make future projections. Although plaintiff draws our attention to specific statements made by Pyramid, she has failed to draw any connection between the statements and the circumstances constituting securities fraud. *See Decker v. Massey–Ferguson*, 681 F.2d at 115–16 (dismissing allegations pursuant to Rule 9(b) for alleging contradictory conclusions in the face of irrefutable facts).

■ To sustain a Rule 10b–5 claim, a plaintiff must show that the defendant acted with scienter, the intent to deceive, manipulate or defraud. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193–94 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668, *reh'g denied*, 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976). Defendants state that plaintiff pleads no facts from which it may be inferred that Pyramid's statements were fraudulently made. Defendants' Opening Brief at 17. "All Plaintiff has done is to list five statements made by Pyramid between October 1988 and February 1989, and then cite the disclosure of the so-called 'adverse information' on March [sic] 21, 1989." *Id.* (footnote omitted). Defendants cite several cases for the proposition that there is no basis for an inference from no more than a poor earnings report that a company's prior statements were fraudulent. Further, defendants state that the fact that Pyramid advised an analyst inquiring whether his earnings estimates were accurate that he should revise his estimates downward because they were too optimistic negates any inference that Pyramid was attempting to conceal adverse information from the public. Defendants' Opening Brief at 18.

Plaintiff, on the other hand, states that the facts constituting scienter are manifest,

and include collective and deliberate concealment of material adverse corporate information, large scale insider trading of Pyramid's securities immediately prior to the revelation of seriously adverse information, and a dramatic decline in Pyramid's stock value when the belated disclosures were made. Plaintiff's Opposition at 25.

Without more particular pleadings by plaintiff, it would appear that defendants' provision of adverse information to the securities analysts negates an inference that the company acted with an intent to defraud. *See Goldberg v. Freedom Federal Savings Bank*, No. 88–C–4787, slip op. at 9, 1989 WL 8503 (N.D.Ill. Jan. 31, 1989); *see also Hayden Leason v. Actrix Computer Corp.*, No. C–84–20108, slip op. at 2–3 (N.D.Cal. Jan. 24, 1989) ("It is implausible that a person bent on fraud" would provide adverse information to investors).

"Rule 9(b) will have failed in its purpose if conclusory generalizations such as these will permit a plaintiff to set off on a long and expensive discovery process in the hope of uncovering some sort of wrongdoing or of obtaining a substantial settlement." *Decker v. Massey–Ferguson*, 681 F.2d at 116. Plaintiff is granted 30–days leave to replead her claims with the specificity demanded by Rule 9(b).

### D. *The Secondary Liability Claims*

Plaintiff also seeks to hold each of the individual defendants liable for 10b–5 violations under the secondary liability theories of aiding and abetting, complaint ¶¶ 41–43, and conspiracy. *Id.* ¶ 40.

#### 1. Aiding and Abetting

■ Under *Harmsen v. Smith*, 693 F.2d 932, 943 (9th Cir.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983), the elements necessary to state a claim for aiding and abetting a violation of Rule 10b–5 are (1) the existence of an independent primary wrong; (2) actual knowledge by the alleged aider and abettor of the wrong and his role in furthering the wrong; and (3) substantial assistance in the wrong. *See also Jett v. Sunderman*, 840 F.2d 1487, 1495 (9th Cir.1988). Case law suggests that "substantial assistance" requires a "significant and active, as well as a knowing participation in the wrong." *Klein v. King*, No. C–88–3141–FMS, slip op. at 11, 1989 WL 225027 (N.D.Cal. Mar. 1, 1989), *quoting Wright v. Schock*, 571 F.Supp. 642 (N.D.Cal.1983), *aff'd*, 742 F.2d 541 (9th Cir.1984).

As discussed above, plaintiff has failed to adequately allege the existence of the primary wrong, Rule 10b–5 liability. In addition, plaintiff has failed to plead the other elements in more than the most conclusory terms. Plaintiff's claim for aiding and abetting is hereby dismissed with 30–days leave to amend to allege facts showing an independent wrong, defendant's knowledge thereof, and substantial assistance therein.

#### 2. Conspiracy

Plaintiff alleges that defendants entered into a conspiracy to artificially inflate and maintain the market price of Pyramid's common stock, in violation of the federal securities laws. Complaint ¶ 40. Defendants argue that plaintiff's claim of conspiracy should be dismissed for failure to plead primary liability and for failure to plead with particularity. Defendants' Opening Brief at 22. Defendant Rollnick separately urges the dismissal of the conspiracy charge for failure to plead the existence of a conspiratorial agreement. Defendant Rollnick's Opening Brief at 3–4.

■ A complaint for civil conspiracy must allege actionable injury to the pleader and, depending on the jurisdiction's substantive law of conspiracy, often must contain allegations of an overt act committed in the course of the alleged conspiracy by one of the parties charged. 5 Wright & Miller, *Federal Practice and Procedure* § 1233 at 182 (1969). The parties agree that to state a claim for conspiracy, a plaintiff must plead both an agreement to participate in an unlawful act, and an injury caused by an unlawful overt act performed in furtherance of the agreement. *Roberts v. Heim*, 670 F.Supp. 1466, 1483–84 (N.D. Cal.1987), *aff'd in part and rev'd in part on other grounds sub nom.*, *Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d

646 (9th Cir.1988); *see also* W. Prosser, *Law of Torts* § 46, at 292 (5th ed. 1984) (to establish a civil conspiracy, plaintiff must allege both an agreement and that an unlawful overt act was committed by one of the parties in pursuance of the agreement). In *Roberts*, the court held that because plaintiffs stated a claim under § 10(b), plaintiffs clearly alleged an injury caused by an unlawful act. *Id.* at 1484. By contrast, because plaintiff Alfus has not stated a claim under § 10(b), she has not successfully alleged an injury caused by an unlawful act.

■ In civil conspiracy actions, courts insist upon a higher level of specificity than is usually demanded of other pleadings. This insistence upon a higher level of specificity may result from the frequent presence of fraud as part of plaintiff's claim, which brings the complaint under Fed.R. Civ.P. 9(b) that the circumstances constituting fraud be stated with particularity. Wright & Miller, *supra*, at 182. In this case, plaintiff's allegations that defendants conspired to commit fraud are insufficient both for failure to plead conspiracy with the requisite particularity and for failure to plead an agreement to participate in an unlawful act. *Roberts*, 670 F.Supp. at 1483–84; *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985); *see also* Fed.R. Civ.P. 9(b) (in all averments of fraud, "the circumstances of fraud shall be stated with particularity").

■ To survive a motion to dismiss, plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement. *Roberts*, 670 F.Supp. at 1484 (proof of a conspiracy does not require a showing of an explicit agreement; a demonstration of a tacit agreement is enough); *see also Halberstam v. Welch*, 705 F.2d 472, 479 (D.C.Cir.1983). It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves towards this wrongful goal by virtue of a mutual understanding or agreement. *Roberts*, 670 F.Supp. at 1484.

Plaintiff charges that it alleged conspiracy to commit fraud with the requisite specificity by stating the roles of each defendant in the company and the participation of each in the issuance of the five alleged fraudulent statements. Plaintiff's Opposition Brief at 27. Plaintiff alleges certain acts—that defendant Robertson signed two of the contested documents, that defendant Lussier participated in the issuance of several of the alleged misleading statements and that certain of the defendants sold stock within a four month period, but plaintiff fails to allege any agreement by the defendants. Plaintiff merely alleges that "a conspiracy, common enterprise and common course of conduct commenced at least as early as October 31, 1988 and involved all defendants," and that "[d]efendants accomplished their conspiracy, common enterprise and common course of conduct by issuing false and misleading statements to the investing public." Complaint ¶ 40.

Plaintiff has not alleged an injury causing damages or an agreement, and the conclusory statements that she makes are not sufficient to state a claim for conspiracy against the individual defendants. Defendants' motion to dismiss the conspiracy claims (including defendant Rollnick's motion) is hereby granted with leave to plead the existence of an agreement and specific facts concerning the agreement.

## III. COUNT II: INSIDER TRADING CLAIMS

### A. *Factual Background*

Plaintiff alleges that during the class period, which extends over approximately four and one-half months, defendants Dolinar, Shellooe, Rollnick and Tolchin ("Defendant Sellers") engaged in massive insider selling of approximately 273,820 shares of Pyramid common stock. Complaint ¶ 9. Plaintiff brings her private claim for relief under Section 10(b) and Rule 10b–5 of the Securities Exchange Act. Defendants deny that such a claim exists in the Ninth Circuit under § 10(b), and suggest that plaintiff may have intended to bring the claim under § 20A of the Exchange Act, 15

U.S.C. § 78t–1. To state a claim under § 20A, the trading must have occurred "contemporaneously." § 78t–1(a). Even if this Court were to find that there is a private right of action under § 10(b) and Rule 10b–5, defendants assert that this Court should follow the Second Circuit's lead and imply the same "contemporaneousness" requirement as is contained in the new statute. *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 94–95 (2d Cir.1981); *Shapiro v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228, 237 (2d Cir.1974).

### B. *Legal Analysis*

The Ninth Circuit has never considered whether there is an implied private right of action to recover damages for improper insider trading under § 10(b) or Rule 10b–5, although other courts, most notably the Second Circuit, have implied such a right.[6] *See Wilson v. Comtech Telecommunications Corp.*, 648 F.2d at 94–95. Congress recently enacted § 20A of the Securities Exchange Act of 1934, which expressly provides for private suits against inside traders who trade "contemporaneously" with private party plaintiffs. § 78t–1(a). The statute is applicable to actions which arose on or after November 19, 1988. Plaintiff specifically disclaims any intent to proceed under § 20A, Plaintiff's Opposition Brief at 28 n. 15;[7] § 20A does not preempt preexisting remedies. § 78t–1(d).

■ This Court need not reach the issue of whether a private right of action is implied under § 10(b) or Rule 10b–5, for even if the Court recognized a private right of action, plaintiff has not alleged that any defendant traded contemporaneously with her. *See Wilson v. Comtech*, 648 F.2d at 94–95 (only those persons who purchased stock contemporaneously with the alleged insider stock sales have standing to bring the insider trading claim).

The duration of a "contemporaneous" class varies, although the courts have interpreted the "contemporaneous trading" requirement quite strictly. First, a plaintiff's trade must have occurred *after* the wrongful insider transaction. *See, e.g., In re Equity Funding Corporation*, 416 F.Supp. at 183–85; *In re Olympia Brewing Co. Securities Litigation*, 613 F.Supp. 1286, 1298–99 (N.D.Ill.1985); *O'Connor & Associates v. Dean Witter Reynolds, Inc.*, 559 F.Supp. 800, 803 (S.D.N.Y.1983); *see also* Wang, *The "Contemporaneous" Traders Who Can Sue An Inside Trader*, 38 Hastings L.J. 1175, 1178 (1987) and cases cited therein.

Further, the contemporaneous requirement has been deemed not met if plaintiff's trade occurred more than a few days apart from defendants' transactions. *See, e.g., Wilson v. Comtech*, 648 F.2d 88 (plaintiff's sale of stock approximately one month after defendant's purchase not contemporaneous); *Backman v. Polaroid Corp.*, 540 F.Supp. 667, 671 (D.Mass.1982) (plaintiff who traded two and seven days after defendants' sale did not trade contemporaneously); *Kreindler v. Sambo's Restaurants, Inc.*, [1981–1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,312, 1981 WL 1684 (S.D.N.Y.1981) (purchase seven days after the insider's sale does not meet the contemporaneous requirement).

Plaintiff acknowledges that some courts "drastically limit" the class of plaintiffs who may bring suit for a breach of an insider trader's duties, but that other courts have imposed liability for the entire class of individuals who purchased shares between the time of the initial breach and the time of the remedial disclosure. Plaintiff's Opposition at 31, *citing Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 353 F.Supp. 264 (S.D.N.Y.1972) and *Elkind v. Liggett and Myers, Inc.*, 635 F.2d 156 (2nd Cir.1980).

---

6. Although the issue has never been addressed by the Ninth Circuit, one district court in the Circuit has recognized the claim. *In re Equity Funding Corp. of America Securities Litigation*, 416 F.Supp. 161, 183–85 (C.D.Cal.1976).

7. At oral argument, plaintiff's counsel stated that the alleged class period commenced approximately ten days before the statute came into effect.

In the instant case, the initial breach is alleged to have occurred on November 7, 1988, and the remedial disclosure made on March 23, 1989, approximately a four and one-half month period. In contrast to the four and one-half month period here at issue, in *Shapiro* the contemporaneous trading period was four days, and in *Elkind* it was two days. The cases that plaintiff cites are thus not authority for plaintiff's assertion that a class of purchasers who purchased stock over a four month period can all be contemporaneous traders.

Based on the above legal analysis, plaintiff has failed to allege that she traded contemporaneously with any defendants' stock sale and therefore lacks standing to bring a private insider trading claim. Because the named plaintiff lacks standing to bring the claim, she cannot pursue the claim on behalf of the class. *La Mar v. H & B Novelty and Loan Co.*, 489 F.2d 461, 465–66 (9th Cir.1973) (a class plaintiff may not represent the class for claims she does not share). Count II of the complaint is hereby dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## IV. COUNT III: NEGLIGENT MISREPRESENTATION

█ Plaintiff alleges that defendants induced her to buy Pyramid shares through the misrepresentations and omissions described above, and through failing to disclose material facts with respect to Pyramid's future prospects. Complaint ¶ 55. Plaintiff asserts that defendants should have foreseen that she and other class members would rely on their statements and therefore defendants are liable for the tort of negligent misrepresentation.

█ Liability for negligent misrepresentation may attach only where plaintiff establishes that defendants breached a duty owed to him. Applying the six factors set forth in *Goodman v. Kennedy*, 18 Cal.3d 335, 134 Cal.Rptr. 375, 556 P.2d 737 (1976),[8] a number of recent Northern District cases have held that negligent misrepresentation claims based solely on "aftermarket" documents (such as the present case) should be dismissed because unlike offering materials, the purpose of aftermarket financial reports is not to create a market for stock. *Weinberger v. Schroeder*, No. C–84–20757–WAI, slip op. at 8 (N.D.Cal. Oct. 28, 1986); *In re Worlds of Wonder*, 694 F.Supp. 1427, 1436 (N.D.Cal. 1988); *Feldman v. Glaze*, No. C–87–20723–WAI, slip op. at 6 (N.D.Cal. May 12, 1988); *In re Seagate Technology II*, No. C–88–20489–RPA, slip op. at 17–18 (N.D.Cal. 1989); *In re Genentech, Inc. Securities Litigation*, No. C–88–4038–DLJ, slip op. at 13–16, 1989 WL 106834 (N.D.Cal. July 7, 1989); *Levy v. Eletr*, 724 F.Supp. 1269, 1273 (N.D.Cal.1989); *see also In re Coleco Securities Litigation*, 591 F.Supp. 1488 (S.D.N.Y.1984).

Plaintiff argues that this Court should reject *Weinberger*, since it ignores the realities of the securities market, and follow *International Mortgage Co. v. John P. Butler Accountancy Corp.*, 177 Cal. App.3d 806, 223 Cal.Rptr. 218 (1986) (an accountant had a duty to persons "who reasonably and foreseeably rely" on his conduct or statements) and *Gaillard v. Arthur Young*, No. C–85–2373–RFP, 1989 WL 106834 (N.D.Cal. July 10, 1985) (accounting firm might be liable for negligent misrepresentations in a registration statement).[9]

8. The six factors which must be considered to determine whether a duty exists absent privity between the parties are: whether the statements were intended to affect future shareholders; the closeness between the aftermarket statements and any harm to plaintiffs; the certainty that any injury to plaintiffs was caused by aftermarket representations; foreseeability; moral blame; and policy considerations. 18 Cal.3d at 342–43, 134 Cal.Rptr. 375, 556 P.2d 737.

9. In *In re Convergent Technologies Second Half 1984 Securities Litigation*, No. C–85–20130–SW,

slip op., 1988 WL 215412 (N.D.Cal. May 23, 1988), Judge Williams relies on *Butler*. A California appellate court, however, observed that *Butler* represents an "aberrant viewpoint" and should be limited to independent auditor cases. *Accord, In re Worlds of Wonder Securities Litigation*, 694 F.Supp. 1427, 1436 (N.D.Cal.1988) (*WOW I*). Curiously, *In re Worlds of Wonder Securities Litigation*, No. 721 F.Supp. 1140, 1149 (N.D.Cal.1989) (*WOW II*) upholds plaintiffs'

*Weinberger, Feldman* and *In re Genentech,* however, found *Butler* distinguishable from a case involving misrepresentations made by directors and officers of a corporation on grounds that the independent accountant has a unique public function, which "does not find a close parallel in a director's or officer's obligations to prospective shareholders." *Weinberger,* slip op., at 7. The rationale of *Weinberger* and *Feldman* is persuasive, and plaintiff's claim for negligent misrepresentation, as it pertains to aftermarket acts or omissions, is dismissed without leave to amend. To the extent that the claim is based on documents other than aftermarket statements (such as prospectuses) plaintiffs are given leave to amend to so allege.

## CONCLUSION

Defendants' motion to dismiss the complaint is granted with 30–days leave to amend as detailed in this memorandum. The stay of discovery, originally granted on August 11, 1989 and extended on September 15, 1989, will be lifted in accordance with limitations set by the Court at the status conference to be held on April 27, 1990 at 10:00 a.m., U.S. District Court, 280 So. First Street, San Jose. Prior to the April 27 status conference, the parties are ordered to meet and confer in an attempt to arrive at a mutually agreeable discovery plan. If the parties are unable to agree, each party is to submit its own written plan for discovery.

IT IS SO ORDERED.

negligent misrepresentation claim, without indicating an intent to depart from *WOW I.*